UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
IN THE MATTER OF THE CLAIM OF NICOLE
WELCOME, as the mother and natural guardian of ZG, an
infant, and NICOLE WELCOME, individually,

                        Plaintiffs,

       -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
OCEAN HILL COLLEGIATE CHARTER SCHOOL,
UNCOMMON SCHOOLS INC., and PRINICIPAL HANNAH
SOLOMON,

                        Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-5407 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Nicole Welcome, individually and as the mother and natural guardian of ZG, a twelve-year-old female, brings this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. and certain state tort laws against Defendants New York City Department of Education ("DOE Defendant"), and Uncommon Schools Inc., Ocean Hill Collegiate Charter School, and Principal Hannah Solomon (collectively, "School Defendants"). (Am. Compl. (Dkt. 10).)[1]

Before the court are separate motions to dismiss Plaintiff's amended complaint by DOE Defendant and School Defendants. (See DOE Defendant's Motion to Dismiss ("DOE Def. Mot.") (Dkt. 23); School Defendants Mot. to Dismiss ("School Defs. Mot.") (Dkt. 28)). For the reasons stated below, DOE Defendant's motion is GRANTED and School Defendants' motion is GRANTED.

---

[1] Plaintiff voluntarily dismissed her claims against both the City of New York and Camba, Inc. (Not. Of Voluntary Dismissal, (Dkt. 26); (April 20, 2018, Order (Dkt. 29).))

1

# I. BACKGROUND

## A. Facts

The court takes the following statement of facts largely from Plaintiff's amended complaint, the well-pleaded allegations of which the court generally accepts as true for purposes of the motions to dismiss. See N.Y. Pet Welfare Ass'n v. City of New York, 850 F.3d 79, 86 (2d Cir. 2017).

This case arises out of unquestionably tragic facts. Plaintiff's claims stem from two separate events of attempted rape, assault, and robbery that occurred on September 30, 2016, and October 6, 2016, at a school building located at 1137 Herkimer Street, Brooklyn, NY 11233. (Am. Compl. ¶ 14.) This building houses Mott Hall IV (a New York City DOE school), Eagle Academy for Young Men II (a charter school), and Ocean Hill Charter School ("Ocean Hill"), where ZG was a sixth-grade student at the time of these incidents. (Id.)

### 1. September 30, 2016 incident

On September 30, 2016, at approximately 6:00 pm ZG was exiting the school building following her participation in an after-school program located at Ocean Hill. (Id. ¶ 19.) As ZG was leaving through the front of the building, four young men "accosted her and instructed her to go back into the building." (Id. ¶ 20.) The men wore uniforms from the co-located schools, Mott Hall IV and Eagle Academy for Young Men II. (Id.)

One of the men took ZG by the arm, and while passing a guard, forced her downstairs to the basement area where the after-school program was held. (Id. ¶ 21.) "None of the guards instructed any of the students to sign back in, as is required, nor did anyone prevent the boys from taking her back downstairs." (Id.) The men proceeded to force ZG on the floor and one of them reached into his pants and pulled out his penis while standing over her. (Id. ¶ 22.) ZG put

her head down to avoid oral penetration and one of the men allegedly said to her: "if you keep playin', the longer you take, the longer you gonna be here." (Id.) ZG tried to go up the stairs and push the exit door open, but the door was locked from the inside. One of the men proceeded to grab ZG, which caused her to trip and fall back onto the floor. (Id. ¶ 23.) While on the floor, one of the men rolled ZG's body on top of his, causing her buttocks to make contact with his genitalia. (Id.) ZG tried to get up, but the other men held her down. (Id.)

While still on the floor, one of the men pulled out his penis and "approached" ZG's mouth with it. The men "took turns in fondling ZG, touching her in her private areas causing her great pain and humiliation." (Id. ¶ 24.) While this was happening, ZG attempted to protect herself by kicking her legs. (Id.) The men continued to hold her down, and one man proceeded to penetrate ZG's buttocks. (Id. ¶ 25.) The four men proceeded to turn ZG around, and one man "made contact with ZG's vagina." (Id. ¶ 26.) Upon hearing voices approaching, the men let ZG go and ran away. (Id.)

ZG was in shock after the incident and did not report what had happened to the school or her mother. (Id.) However, the incident occurred in view of security cameras, which according to Plaintiff, "should have alerted the school staff." (Id. ¶ 27.) Plaintiff alleges that ZG was fearful and nervous to go back to school and no longer wanted to participate in the after-school program. (Id. ¶ 30.)

2. October 6, 2016 incident

On October 6, 2016, while walking to the bus stop coming from the after-school program, the same male students accosted ZG. (Id. ¶ 32.) The men "grabbed her sweater, shirt, metro-card, and money, and ran inside the school building." (Id.) ZG ran into the main school building to find a security guard; however, there were none present. (Id. ¶ 33.) ZG proceeded to

3

run after the men, who had gone to the basement, to retrieve her belongings. (Id. ¶ 34.) One of the men grabbed ZG and "put his hand on her upper back in an attempt to force her upper body down and forward toward his penis," but ZG managed to stay standing. (Id.) One of the men pulled ZG's pants down to her ankles. (Id. ¶ 35.) ZG tried to go up the stairs but was "overpowered and pulled back down." (Id.)

The men forcibly held ZG's arms, and one of the men "put his crotch next to her forehead and his hand in the area of his penis . . ." (Id. ¶ 36.) Plaintiff avers that even though all of this occurred in sight of security cameras, ZG was left to "fight off four boys" for half an hour by herself. (Id. ¶ 37.) Ultimately, a janitor approached the scene and the men ran off. (Id. ¶ 38.) The janitor proceeded to unlock the exit doors and ZG was taken to the dean's office. (Id. ¶ 39.)

The dean "instructed ZG to write down in her own words what occurred." (Id. ¶ 40.) The dean proceeded to call ZG's mother and told her that "some students tried to take something from ZG at school, and she should come to pick her up." (Id.) Plaintiff alleges that that evening, Principal Solomon "did not call the police, ambulance, nor did she instruct the dean to take ZG to the school nurse." (Id. ¶ 41.) At home, ZG's mother noticed a change in ZG's demeanor, however, ZG did not discuss the incident. (Id. ¶ 42.)

The following day, Plaintiff went to the school to inquire about what had happened. (Id. ¶ 43.) She asked to speak with Principal Solomon but was told that the Principal was "busy." (Id.) Upon returning home, Plaintiff was told to come back to the school immediately. (Id. ¶ 44.) At the school, Plaintiff was told that the school "had something on the video with ZG that they were further investigating" but did not tell her what specifically was on the video. (Id.) The school proceeded to contact the police and the ambulance, and ultimately told Plaintiff that the video showed "some boys pulling down ZG's pants on the video on October 6, 2016, and they

4

were further investigating." (Id. ¶ 45.) The school did not mention the incident that occurred on September 30, 2016. (Id.) The ambulance took ZG to Woodhull Hospital emergency room, and then to Brooklyn Hospital, and police officers interviewed ZG soon thereafter. (Id. ¶ 46.)

The following day, Plaintiff received a call from Principal Solomon instructing her not to bring ZG back to school "because the incident made the media." (Id. ¶ 47.) Upon turning on the news, Plaintiff learned of the September 30, 2016 incident and began receiving calls before "she knew about the [September 30, 2016] incident." (Id. ¶ 48.) Plaintiff alleges that she felt "angry, embarrassed, humiliated, and demeaned as a mother that she had to learn from third parties, including the media, that her infant daughter was the subject of an attempted rape at her school by four boys, not once, but twice." (Id. ¶ 49.)

### B. Procedural History

Plaintiff filed her initial complaint with this court on September 15, 2017. (Compl. (Dkt. 1).) On November 30, 2017, Plaintiff filed an amended complaint. (Am. Compl.) On April 12, 2018, Defendant Camba filed a motion to dismiss Plaintiff's amended complaint. (Camba's Not. of Motion to Dismiss (Dkt. 22).) On April 13, 2018, Defendants City of New York and the New York City DOE filed a motion to dismiss Plaintiff's complaint. (DOE Def. Mot; Mem. in support of DOE's Mot. ("DOE Def. Mem.") (Dkt 24).) That same day, Plaintiff filed a notice voluntarily dismissing Defendants Camba and the City of New York. (See Not. of Voluntary Dismissal (Dkt. 26); April 20, 2018, Order (Dkt. 29).) On April 13, 2018, the School Defendants, Ocean Hill Collegiate Charter School, Hannah Solomon, and Uncommon Schools Inc., moved to dismiss all federal claims against them and requested that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. (School Defs. Mem. in Supp. of Mot. ("School Defs. Mem.") (Dkt. 28).)

Plaintiff's memorandum of law in opposition to School Defendants' and DOE Defendant's motions notes that "Plaintiff has decided not to assert any claims against the remaining Defendants based upon violations of 42 U.S.C. 1983, the Equal Protection and Due process Clauses of the Fourteenth Amendment to the U.S. Constitution . . . and the sole federal claim raised here is a violation of Title IX of the Education Amendments of 1972 by the DOE, Ocean Hill and Uncommon Schools." (Pl. Opp'n of Motion to Dismiss at 1 ("Pl. Opp'n") (Dkt. 25).)

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

In reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). "In determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005). "[W]hatever documents may properly be considered in connection with the Rule 12(b)(6) motion, the bottom-

line principle is that once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (citation and internal quotation marks omitted). It is generally improper to consider factual averments contained in affidavits on a Rule 12(b)(6) motion. See Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988). Accordingly, the court declines to consider the School Defendants' affidavit (Dkt. 28-7) in connection with the School Defendants' motion to dismiss. See also Roe v. Chappaqua Cent. Sch. Dist., 16-CV-7099 (VB), 2017 WL 4119655, at *6 (S.D.N.Y. Sept. 15, 2017).

## III. DISCUSSION

### A. Title IX Claim as to Principal Hannah Solomon

The complaint asserts a Title IX claim against Principal Hannah Solomon in both her individual and official capacity. (Am. Compl. p. 1-2.) School Defendants argue that "[t]he claims against Principal Solomon must be dismissed as she is entitled to qualified immunity." (School Defs. Mem. at 14.) Plaintiff's opposition does not address this argument at all. (See Pl. Opp'n.) Consequently, her Title IX claim as to Principal Solomon is deemed abandoned and hereby dismissed. See Martinez v. Sanders, 02-CV-5624 (RCC), 2004 WL 1234041, at *3 (S.D.N.Y. June 3, 2004) (finding that the plaintiff's failure to oppose dismissal of certain claims enabled the court to deem those claims abandoned); Bonilla v. Smithfield Assocs. LLC, 09-CV-1549 (DC), 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (holding that, because the plaintiff "fail[ed] to respond to the remaining two arguments" for dismissing certain of the claims, he had "effectively abandoned" those claims).

Even if Plaintiff had not abandoned her Title IX claim as to Principal Solomon, this court finds that Principal Solomon cannot be held individually liable under Title IX because Title IX

7

does not provide for individual liability. See Miotto v. Yonkers Pub. Sch., 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (collecting cases); see also Bliss v. Putnam Valley Cent. Sch. Dist., 06-CV-15509 (WWE), 2011 WL 1079944, at *5 (S.D.N.Y. Mar. 24, 2011) ("There can be no claim under Title IX against an individual defendant who does not receive federal funding under Title IX.").

B.  **Title IX Claim Brought by Plaintiff Nicole Welcome in her Individual Capacity**

The complaint states that Plaintiff brings this action both individually and on behalf of her minor daughter, ZG. (Am. Compl. p 1.) DOE Defendant argues that "any claim asserted by [Plaintiff] in her individual capacity [] should be dismissed" for failure to allege any violation of Plaintiff Welcome's rights or any duty afforded to her. (DOE Defs. Mem. at 9.) Plaintiff's opposition does not address this argument at all. (See Pl. Opp'n.) Therefore, for the same reasons provided above, Plaintiff's Title IX claim brought in her individual capacity is deemed abandoned and hereby dismissed.

Even if Plaintiff had not abandoned her Title IX claim brought in her individual capacity, Plaintiff would lack standing to assert such a claim, as she is not the intended beneficiary of a federally-funded school program. HB v. Monroe Woodbury Cent. Sch. Dist., 11-CV-5881 (CS), 2012 WL 4477552, at *18 (S.D.N.Y. Sept. 27, 2012) (finding that Plaintiffs lacked standing to bring a Title VI claim on their own behalf "because they are not beneficiaries of federally-funded school programs."). See also Soriano ex rel. Garcia v. Bd. of Educ. of New York, 01-CV-4961 (JG), 2004 WL 2397610, at *1 n. 2 (E.D.N.Y. Oct. 27, 2004) (noting plaintiff conceded parent did not have standing to bring Title IX claim); Morgan v. City of New York, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) (same).

C.  **Plaintiff's Title IX Claim as to DOE and School Defendants**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). When Title IX was introduced as an amendment to the Education Amendments of 1971, it was designed to mirror and fill the gaps of the Civil Rights Act and ensure that educational opportunities not be based on sex. See Amend. 398, 117 Cong. Rec. 30, 156 (1971); 117 Cong. Rec. 30, 406-07 (1971) ("[E]ducational opportunity should not be based on sex, just as we earlier said it should not be based on race, national origin, or some of the other discriminations.") (Senator Birch Bayh).

"Because the ultimate purpose of Title IX is to prohibit sex discrimination at all levels of education, the Act proscribes discrimination in three ways: (1) no one may be excluded from participation in any educational program or activity; (2) no one may be denied the benefits of any education program or activity; and (3) no one may be subjected to discrimination under any education program or activity." Tubbs v. Stony Brook University, 15-CV-0517 (NSR), 2018 WL 5621488, at *10 (S.D.N.Y. Oct. 30, 2018) (citing 20 U.S.C. § 1681(a)).

Congress intended, through Title IX, "to avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). Federal courts have long recognized an implied private right of action under Title IX. See Hayut v. State Univ. of New York, 352 F.3d 733, 749 (2d Cir. 2003) (citing Cannon, 441 U.S. at 691).

Under Title IX, for a school to be held liable, it must be "deliberately indifferent to sexual harassment, of which [it] had actual knowledge, that is so severe, pervasive, and objectively

offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." Davis ex rel. La Shonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650 (1999). An institution is deliberately indifferent to third-party harassment "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Id. at 648. Furthermore, Title IX liability is appropriate only if the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." Id.

Here, Plaintiff claims that the DOE Defendant and School Defendants were deliberately indifferent to the assaults of ZG. There is no dispute that Title IX applies to both the DOE Defendant and School Defendants. For the reasons that follow, this court finds that Plaintiff has failed to state a Title IX claim against both the DOE Defendant and School Defendants.

1. Actual Knowledge

An educational institution cannot be held liable pursuant to Title IX without actual knowledge or notice of the harassment. Constructive knowledge (i.e., allegations that the school should have known of the harassment) is not enough. Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 666 (2d Cir. 2012). A plaintiff must further demonstrate that someone "vested with authority to address the alleged discrimination and to institute corrective measures" on behalf of the funding recipient had actual knowledge. Hayut, 352 F.3d at 750 (internal quotation marks omitted). On a motion to dismiss, courts may determine, as a matter of law, whether the educational institution is alleged to have had actual knowledge of the harassment. See Davis, 526 U.S. at 649.

### a) DOE Defendant

Plaintiff's Title IX claim is dismissed as to the DOE Defendant because Plaintiff fails to sufficiently allege that the DOE possessed actual knowledge of the assaults. While Plaintiff asserts that "the [September 30, 2016] incident occurred in plain sight of security cameras that should have alerted the school staff, had someone been monitoring the cameras;" (Am. Compl. ¶ 27) and that a "janitor came downstairs" during the October 6, 2016 incident (id. ¶ 38) such allegations are not enough to plead actual knowledge for purposes of Title IX.

First, the "actual knowledge" standard requires more than allegations that school staff "should have known" about the assault. See Davis, 526 U.S. at 642 ("we declined the invitation to impose liability under what amounted to a negligence standard—holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known.") (emphasis in original). Here, Plaintiff alleges that school staff should have known about the assault through watching the security footage, but that is not enough for liability under Title IX.

Second, Title IX liability can only attach when the individual who has notice is an official with the authority to take corrective action. Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998) (holding Title IX liability to be predicated upon notice to an "appropriate person," who is "an official of the [university] with authority to take corrective action to end the discrimination"); Gonzalez v. Esparza, 02-CV-4175 (SWK), 2003 WL 21834970, at *3 (S.D.N.Y. Aug. 6, 2003) (dismissing Title IX claim against school board because plaintiff alleged neither "that any school or [b]oard official with the authority to take corrective action was actually aware of" the harassment, nor "that the [b]oard [d]efendants had enough knowledge of the harassment to respond with remedial measures designed to address the problem"). Here, even if Plaintiff had alleged that the security guard or janitor were agents of the DOE, neither

11

have sufficient authority to take corrective action to address the harassment. Accordingly, because Plaintiff fails to sufficiently allege that DOE Defendant had actual knowledge of the sexual assaults, Plaintiff's Title IX claim against the DOE Defendant is dismissed.

### b) *School Defendants*

Plaintiff plausibly alleges that School Defendants had actual knowledge of the October 6, 2016 incident. Plaintiff alleges that following the October 6, 2016 incident, ZG was taken to the dean's office where she was instructed to "write down in her own words what occurred." (Am. Compl. ¶¶ 39-40.) Plaintiff further alleges that Ocean Hill informed her that they had video footage of "some boys pulling down ZG's pants" on October 6, 2016. (Id. ¶ 45). These facts are sufficient to establish that the school was put on notice for purposes of the October 6, 2016 incident. See Hunter ex rel. Hunter v. Barnstable Sch. Comm., 456 F. Supp. 2d 255, 265 (D. Mass. 2006) (finding actual knowledge requirement "easily [] satisfied" based on plaintiffs' report of harassment to school principal), aff'd sub nom. Fitzgerald v. Barnstable Sch. Comm., 504 F. 3d 165 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009).

School Defendants argue that Plaintiff fails to allege that the school had actual knowledge of the September 30, 2016 incident. (School Defs. Mem. at 13.) Plaintiff alleges that ZG "did not report [the September 30, 2016] incident to the school, or her mother." (Am. Compl. ¶ 26). Plaintiff appears to acknowledge that School Defendants were not put on notice of the September 30, 2016 incident directly following the assault in her opposition to Defendants' motions to dismiss. Plaintiff states that Defendants had "actual notice that ZG had been a victim of at least one attempted rape and sodomy"; and that ZG put the "school on notice of at least one sexual attack." (Pl. Opp'n at 6.) Plaintiff does allege that "the news" reported on both the September 30, 2016 and the October 6, 2016 incidents, but does not provide any facts to suggest

that the school reported to the media about the September 30, 2016 incident and therefore knew about the incident prior to the media reporting on it. (Amend Compl. ¶ 48). School Defendants cannot be held liable under Title IX for any harassment or assaults that occurred prior to the date that the educational institution was put on notice. Hayut, 352 F.3d at 751. Accordingly, Plaintiff has alleged that the School Defendants had actual notice of the assaults beginning on October 6, 2016, and not prior.

2. Deliberate Indifference

"A finding of deliberate indifference depends on the adequacy of a school district's response to the harassment." Zeno, 702 F.3d at 666 (citing Hayut, 352 F.3d at 750). An employer or educational institution is deliberately indifferent when its "response to known discrimination 'is clearly unreasonable in light of the known circumstances.'" Hayut, 352 F.3d at 751 (quoting Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999)). A plaintiff may show that a school was deliberately indifferent if its response was "not reasonably calculated to end harassment," Zeno, 702 F.3d at 669; if its inaction "cause[d] students to undergo harassment or ma[d]e them liable or vulnerable to it," Davis, 526 U.S. at 645; or if "remedial action only follow[ed] after a lengthy and unjustified delay," Hayut, 352 F.3d at 751 (internal citations omitted).

As established above, because School Defendants only had actual knowledge of the assaults following October 6, 2016, this court analyzes only whether the School Defendants were deliberately indifferent to the assaults on or after October 6, 2016. Plaintiff alleges that, upon reporting the October 6, 2016 incident to the Dean, school authorities "did not call the police, ambulance, nor did [the Principal] instruct the dean to take ZG to the school nurse." (Am. Compl. ¶ 41.) However, within one day after the incident and after reviewing the security

footage, Plaintiff alleges that the "school contacted the police and the ambulance" and that Plaintiff was told that the school was "further investigating" the incident. (Id. at ¶ 45). Plaintiff's own allegations, therefore, indicate that School Defendants acted expeditiously and reasonably upon knowing that such an assault occurred, and exhibited no indifference to ZG's allegations. See Tesoriero v. Syosset Cent. Sch. Dist., 382 F. Supp. 2d 387, 398 (E.D.N.Y. 2005) ("Where an educational institution "takes timely and reasonable measures to end the harassment," it is not deliberately indifferent.") (internal quotation and citation marks omitted).

Although Plaintiff alleges that School Defendants did not call the police or an ambulance, or take the individual to the nurse within the same day of ZG reporting the incident, the Second Circuit has held a delay in remedial action may constitute deliberate indifference only when such delay is "lengthy and unjustified," which Plaintiff does not allege. Roskin-Frazee v. Columbia Univ., 17-CV-2032 (GBD), 2018 WL 1166634, at *9 (S.D.N.Y. Feb. 21, 2018) (citing Hayut, 352 F.3d 733, 751 (2d Cir. 2003) (citation and quotation marks omitted)). See also Kracunas v. Iona Coll., 119 F.3d 80, 90 (2d Cir. 1997) (finding that a four-to-six month delay could be viewed as deliberately indifferent), abrogated in part on other grounds by Gebser, 524 U.S. at 290-91 (1998); Doe ex rel. Doe v. Coventry Bd. of Educ., 630 F. Supp. 2d 226, 235 (D. Conn. 2009) (denying motion for summary judgment because a jury could reasonably conclude deliberate indifference from six-month delay before school removed sexual assaulter and harasser from victim's class).

Moreover, School Defendants were not required to respond precisely as Plaintiff would have preferred. Rather, an educational institution is held liable "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Romero v. City of New York, 839 F. Supp. 2d 588, 604 (E.D.N.Y. 2012)

(emphasis omitted) (quoting Davis, 526 U.S. at 648)); see also KF ex rel. CF v. Monroe Woodbury Cent. Sch. Dist., 12-CV-2200 ER, 2012 WL 1521060, at *7 (S.D.N.Y. Apr. 30, 2012) ("The school district was not required to proceed in a particular manner. . .") Viewing these facts in the light most favorable to the Plaintiff, the amended complaint does not contain sufficient allegations to state a claim for deliberate indifference.

### 3. Severe or Pervasive Harassment

Because Plaintiff has failed to adequately allege that DOE Defendants had actual knowledge of the incidents or that School Defendants acted with deliberate indifference, this court need not determine whether the assaults Plaintiff endured qualify as sufficiently severe, pervasive, and objectively offensive as to undermine ZG's equal access to education.

Nevertheless, this court finds that the facts alleged in Plaintiff's amended complaint are sufficiently severe such that they would rise to the level of denying ZG equal access to an educational program. See, e.g., Bliss v. Putnam Valley Cent. Sch. Dist., 06-CV-15509 (WWE), 2011 WL 1079944, at *1, *5 (S.D.N.Y. Mar. 24, 2011) (holding single incident where male social studies teacher raped female student "sufficiently severe" under Title IX); M. v. Stamford Bd. of Educ., 05-CV-0177 (WWE), 2008 WL 2704704, at *9 (D. Conn. July 7, 2008), decision vacated in part on reconsideration sub nom. M. ex rel. Mr. M. v. Stamford Bd. of Educ., 05-CV-0177 (WWE), 2008 WL 4197047 (D. Conn. Sept. 9, 2008) (finding single incident of rape by male student of a female special education student sufficiently severe harassment under Title IX), vacated in part on other grounds, 2008 WL 4197047; Kelly v. Yale Univ., 01-CV-1591 (JH), 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) (holding single incident of rape by male student was "sufficiently severe").

15

The court concludes this analysis by noting that the facts in this case raise extremely distressing issues. Title IX was, and still is, a landmark piece of legislation to ensure that all students can receive an education in a safe, non-hostile environment, regardless of their sex. In arriving at its decision today, the court is not saying that Defendants did everything they should have, or could have done, to protect their students. However, Title IX's associated jurisprudence does not impose liability under a negligence standard, but rather requires a finding that the educational institution "intentionally acted in clear violation of Title IX by remaining deliberately indifferent" to harassment of which it had "actual knowledge." Davis, 526 U.S. at 642. Here, that onus was not met.

### D. Supplemental Jurisdiction

Because the court has dismissed all federal-law claims asserted by Plaintiff, it declines to exercise supplemental jurisdiction over any remaining state-law claims raised in Plaintiff's amended complaint. The district court has broad discretion as to whether to exercise its supplemental jurisdiction over state law claims where all federal claims have been dismissed from a suit. See 28 U.S.C. § 1367(c). In making this decision, the court should balance the traditional "values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). As a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" In re Merrill Lynch Ltd. P'ships Litig., 154 F.3d 56, 61 (2d Cir. 1998) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)); see also Kolari v. N.Y. Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims." (quoting Cohill, 484 U.S. at 350 n.7) (alteration in original)).

Here, consideration of the Cohill factors does not upset the presumption against the exercise of supplemental jurisdiction in this case. First, there is no gain in judicial economy to be achieved by retaining the claims, as this court has not yet considered any state-law claims raised by Plaintiff. Second, none of the parties would be disadvantaged by proceeding in state court. Finally, "given that only state-law issues remain in this case, comity dictates that the [c]ourt decline to decide those disputes." Jackson v. Barden, No. 12-CV-1069 (KPF), 2018 WL 340014, at *21 (S.D.N.Y. Jan. 8, 2018). The court sees no reason to depart from this general rule and, accordingly, declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## IV. CONCLUSION

For the foregoing reasons, the DOE Defendant's motion to dismiss (Dkt. 23) is GRANTED and School Defendants' motion to dismiss (Dkt. 28) is GRANTED. Plaintiff's amended complaint is hereby dismissed without prejudice. The Clerk of Court is respectfully DIRECTED to enter judgment for Defendants and close the case.

SO ORDERED.

Dated: Brooklyn, New York  
November 5, 2018

s/Nicholas G. Garaufis  
NICHOLAS G. GARAUFIS  
United States District Judge